CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 14 2017

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

TERRY GLENN CARTER, )
)
    Plaintiff, ) Civil Action No. 7:17CV00172
v. )
) **MEMORANDUM OPINION**
NANCY A. BERRYHILL, Acting )
Commissioner of Social Security, ) By: Hon. Glen E. Conrad
) Senior United States District Judge
    Defendant. )

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423, and 42 42 U.S.C. § 1381 et seq., respectively. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). This court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's decision. Because the plaintiff has abandoned his claim for disability insurance benefits, the only issue presently before the court is whether substantial evidence supports the Law Judge's conclusion that the plaintiff failed to meet the requirements for entitlement to supplemental security income benefits.[1] If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

---

[1] At the hearing on the Commissioner's motion for summary judgment, plaintiff's counsel represented to the court that the plaintiff had amended the alleged onset date from August 1, 2009 to July 15, 2015 and could therefore not satisfy the insured status requirements of the Act for disability insurance benefits.

The plaintiff, Terry Glenn Carter, was born on May 23, 1970, and eventually completed his high school education. Mr. Carter has worked as a janitor and a fast food worker. He last worked on a regular and sustained basis in 2009. On May 30, 2013, Mr. Carter filed applications for disability insurance benefits and supplemental security income benefits. Mr. Carter alleged disability based on lower back pain; injury to his hands, knees, and shoulders; diabetes; headaches; a burning sensation in his right arm; and pain in his feet and ankles. He now maintains that he has remained disabled to the present time. Mr. Carter's applications were denied upon initial consideration and reconsideration. Mr. Carter then requested and received a de novo hearing and review before an Administrative Law Judge.

In an opinion dated February 11, 2016, the Law Judge applied the five-step sequential process for evaluating disability claims.[2] 20 C.F.R. §§ 404.1520 and 416.920. The Law Judge found that Mr. Carter has not engaged in substantial gainful activity since August 1, 2009, and that he suffers from severe impairments including degenerative disc disease, cervical radiculopathy, carpal tunnel syndrome, and obesity. The Law Judge then assessed Mr. Carter's residual functional capacity as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except that the claimant can only occasionally perform handling and fingering bilaterally.

(Tr. 40). Given this residual functional capacity, and after considering Mr. Carter's age, education, and prior work experience, as well as the testimony of a vocational expert, the Law Judge determined that Mr. Carter could not perform any past relevant work, but retained

---

[2] The process requires the Law Judge to consider, in sequence, whether a claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and (5) if not, whether he can perform other work in the national economy. 20 C.F.R. §§ 404.1520 and 416.920. If a decision can be reached at any step in the sequential evaluation process, further evaluation is unnecessary. Id.

2

sufficient functional capacity to perform certain light work roles existing in significant number in the national economy. (Tr. 44). Accordingly, the Law Judge concluded that Mr. Carter has not been disabled since 2009, is not presently disabled, and is not entitled to either disability insurance benefits or supplemental security income benefits. See 20 C.F.R. §§ 4040.1520(f) and 416.920(f). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all administrative remedies, Mr. Carter has now appealed to this court.

While the plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether the plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. §§ 423(d)(2) and 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is constrained to conclude that the Commissioner's final decision is supported by substantial evidence. The Law Judge's opinion reflects a thorough evaluation of Mr. Carter's medical records, the opinions of physicians who examined Mr. Carter, Mr. Carter's testimony about impairments, and Mr. Carter's characteristics.

The medical record reveals that Mr. Carter has received treatment from the Pulaski Free Clinic since 2009. (Tr. 305). The Law Judge tracked Mr. Carter's care at the Free Clinic, noting

3

that Mr. Carter rarely sought care and, when he did, did not show any signs of significant abnormalities. Mr. Carter first complained of hand and shoulder pain in December 2011, but the medical records from that visit do not indicate any significant abnormalities. (Tr. 42, 304). Indeed, at a July 2012 visit, Mr. Carter exhibited full muscle strength, intact cranial nerves, and normal reflexes. (Tr. 42, 303). The Free Clinic first recorded objective evidence of an injury in January 2014 when an X-ray showed mild diffuse degenerative arthritic changes in Mr. Carter's back that supported a diagnosis of degenerative disc disease. (Tr. 42, 355). However, a physical examination of Mr. Carter at that time revealed that the mild objective abnormality did not have any significant effect on Mr. Carter's abilities. (Tr. 43-43, 332).

In denying Mr. Carter's claim, the Law Judge also relied on a consultative physical evaluation performed by neurologist Dr. Rollin J. Hawley in October 2015. (Tr. 43, 356-57). Based on his review of Mr. Carter's medical history, as well as his own clinical findings from nerve conduction studies and an electromyography ("EMG") of Mr. Carter's upper extremities, Dr. Hawley diagnosed Mr. Carter with carpal tunnel syndrome, chronic cervical radiculopathy that resulted in numbness to Mr. Carter's left middle through little fingers, and diabetes mellitus. (Tr. 357). After observing that Mr. Carter was morbidly obese, Dr. Hawley advised Mr. Carter to lose weight and maintain control of his diabetes. (Tr. 356-57). Dr. Hawley recommended that Mr. Carter wear wrist splints at night or when tempted to flex his wrists, and noted that surgery was a possible treatment if less invasive treatments failed to relieve the pain. (Tr. 357). Finally, Dr. Hawley recommended conservative care of Mr. Carter's cervical spine. (Tr. 357).

The Law Judge also gave great weight to the opinion of Mr. Carter's treating physician, Dr. Carl E. Hanks, that Mr. Carter could only occasionally lift 20 pounds, handle, or finger. (Tr. 43). On the other hand, the Law Judge gave less weight to other findings included on a physical

4

assessment form completed by Dr. Hanks, based on the determination that the evaluation of plaintiff's stamina and capacity for sitting and standing were more subjective, and not fully supported by clinical assessments. (Tr. 43).

The Law Judge similarly gave limited weight to the opinion of a state agency medical consultant that Mr. Carter had no severe impairments and the opinion of another state agency medical consultant that Mr. Carter could perform medium work. (Tr. 43-44). The Law Judge explained that giving limited weight to those opinions favored Mr. Carter.

However, the Law Judge also did not fully credit the subjective complaints of Mr. Carter. Although Mr. Carter testified that he experienced pain in his hands, neck, back, and feet, the record does not contain any objective evidence of injury to Mr. Carter's lower extremities. Mr. Carter also testified that he stopped working in 2009 because a supervisor fired him following a disagreement, that he would have continued to work had he not been fired, and that he searched for jobs until he filed for disability benefits. (Tr. 66-67). The Law Judge viewed Mr. Carter's credibility as limited because Mr. Carter initially sought disability benefits as of the date that he stopped working despite testifying that he stopped working because he was fired.

Finally, the Law Judge considered Mr. Carter's characteristics and the opinion of the vocational expert. The Law Judge asked the vocational expert about the availability of jobs for a hypothetical individual of Mr. Carter's age and experience who could lift and carry no more than 20 pounds occasionally and 10 pounds frequently and only occasionally handle and finger. (Tr. 57). The vocational expert testified that such an individual could not perform Mr. Carter's past work, but could perform jobs that exist at the light exertional level such as usher, furniture rental clerk, and gate guard. (Tr. 57-58).

5

On appeal to this court, Mr. Carter, through counsel, makes three arguments in support of his claim for supplemental security income benefits. First, Mr. Carter argues that the Law Judge failed to give controlling weight to the entire opinion of his treating physician, Dr. Hanks.[3] The administrative regulations accord controlling weight to opinions from a treating medical source as long as the source's opinion "'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" Brown v. Comm'r of Soc. Sec. Admin., 873 F.3d 251, 256 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). When a Law Judge declines to give controlling weight to a treating physician's opinion, the Law Judge must consider a nonexclusive list of factors to determine the weight to accord the treating source's opinion. See 20 C.F.R. § 494.1527(c)(2)-(c)(6) (listing the factors to be considered).

In this case, the court believes that the Law Judge properly awarded partial weight to Dr. Hanks' opinion. The Law Judge recognized Dr. Hanks as a treating physician and credited his opinion that Mr. Carter could lift up to 20 pounds occasionally and could only engage in occasional handling and fingering, but gave limited weight to the remainder of Dr. Hanks' opinion, which included that Mr. Carter: (1) could stand and walk on a sustained basis for about four hours, but not at least six hours, and could sit for about two hours; (2) would "experience

---

[3] At the hearing before this court, Mr. Carter, through his attorney, suggested that the Law Judge erred in considering August 1, 2009 as the onset date. According to Mr. Carter, during the administrative hearing, he amended the onset date to July 15, 2015. Even assuming the Law Judge erred in relying on the earlier onset date, the court believes that such an error would be harmless because the Law Judge specifically considered the evidence from 2015 to conclude that Mr. Carter could not establish entitlement to benefits. Because the Law Judge clearly considered the narrower period after the alleged amended onset date, the Law Judge did not err in reviewing the earlier period. See McGougan v. Comm'r, Soc. Sec., Civil Case No. JKB-13-52, 2014 WL 266807, at *1 n.1 (D. Md. Jan. 23, 2014); see also Bourret v. Colvin, No. 2:13-CV-00334-JAW, 2014 WL 5454537, at *3 (D. Me. Oct. 27, 2014) (collecting cases rejecting argument that ignoring amended onset date entitles plaintiff to remand).

pain or other symptoms severe enough to interfere with attention and concentration," and (3) would likely be absent from work more than four times a month. (Tr. 361-62).

The Law Judge observed that while Dr. Hanks' opinion regarding Mr. Carter's upper extremities was supported by clinical "findings and the objective testing," there was a "dearth of medical evidence" as to the remainder of his opinion. (Tr. 43). Indeed, the Law Judge noted that the limited medical evidence in this record does not establish any more than "mild objective abnormalities" with "normal clinical findings." (Tr. 43). Based on those findings, the court believes that the Law Judge was not required to give controlling weight to the entirety of Dr. Hanks' opinion. See 20 C.F.R. § 404.1527(c)(2). Indeed, the court believes that substantial evidence supports the Law Judge's decision to accord little weight to portions of Dr. Hanks' opinion. That evidence includes Dr. Hanks' infrequent examinations of Mr. Carter, the lack of significant laboratory findings or other support for the less credited portions of Dr. Hanks' opinion, and the inconsistency between those portions of Dr. Hanks' opinion and the record as a whole. See 20 C.F.R. § 404.1527(c). In particular, the court notes that Dr. Hanks' assessment of plaintiff's residual functional capacity appears to be inconsistent with the opinions of Dr. Hawley, which were substantially based on objective neurological studies. The Law Judge therefore gave greater weight to the opinions of Dr. Hawley. The court believes that the Law Judge's treatment of these issues was reasonable, in light of the medical evidence in Mr. Carter's case.[4]

Second, Mr. Carter maintains that the Law Judge did not perform a functional analysis of his capacity for attention and concentration. While it is true that Dr. Hanks indicated Mr. Carter

---

[4] The court believes that the Law Judge's treatment of this case can be distinguished from the recent Fourth Circuit decision in Bogley v. Berryhill, No. 16-2381 (4th Cir. Dec. 13, 2017). Contrary to the Law Judge in that case, in the instant case, the Law Judge discussed the weight to be given to all of the opinions of Mr. Carter's treating physician.

7

would frequently experience pain or other symptoms severe enough to interfere with his attention and concentration, the court must again note that such an opinion is simply not substantiated by objective medical findings. The court has found substantial evidence to support the Law Judge's decision to give little weight to Dr. Hanks' opinion regarding Mr. Carter's ability to concentrate. Aside from Mr. Carter's subjective claims of pain, the Law Judge recognized that nothing else in the record supports a finding that Mr. Carter experiences any significant difficulty with attention or concentration. The Law Judge also noted that Mr. Carter "reported that he can pay attention for 'as long as needed,' and denied any problems with finishing what he starts." (Tr. 39, 252). The court therefore believes that the Law Judge's treatment of attention and concentration, as well as her evaluation of Mr. Carter's residual functional capacity, is consistent with the protocol established in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015).

Third, Mr. Carter argues that the Law Judge did not adequately explain whether Mr. Carter's obesity caused any functional limitations in his ability to work or could support Dr. Hanks' findings. However, the court observes that the Law Judge did consider Mr. Carter's obesity in determining Mr. Carter's residual functional capacity, but noted that the medical record did not contain any significant clinical findings relating to Mr. Carter's obesity to support more substantial functional limitations. Dr. Hanks also did not provide the Law Judge with any indication that the conclusory findings in the December 2015 physical assessment relied on Mr. Carter's obesity. In any event, the record shows that Mr. Carter worked for a substantial period of time, despite suffering from significant obesity as well as diabetes.

In affirming the Commissioner's final decision, the court does not suggest that Mr. Carter is totally free of pain and discomfort. However, the court recognizes that the inability to work

8

without any subjective complaints does not of itself render a claimant totally disabled. Craig v. Chater, 76 F.3d 585, 592 (4th Cir. 1996). It appears to the court that the Law Judge considered all of the medical evidence, as well as all of the subjective factors reasonably supported by the record, in adjudicating Mr. Carter's claim for benefits. Specifically, the Administrative Law Judge considered Dr. Hanks' opinion, Mr. Carter's claimed difficulties with attention and concentration, and Mr. Carter's obesity. Thus, the court concludes that all facets of the Commissioner's final decision are supported by substantial evidence.

As a general rule, the resolution of conflicts in the evidence is a matter within the province of the Commissioner, even if the court might resolve the conflicts differently. Richardson v. Perales, supra; Oppenheim v. Finch, 495 F.2d 396 (4th Cir. 1974). For the reasons stated, the court finds the Commissioner's resolution of the pertinent conflicts in the record in this case to be supported by substantial evidence.

Accordingly, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, supra.

The Clerk is directed to send certified copies of this opinion to all counsel of record.

ENTER: This 14th day of December, 2017.

_____
Senior United States District Judge